**IN THE COURT OF APPEALS OF IOWA**

No. 25-1012
Filed September 17, 2025

**IN THE INTEREST OF J.S.,**
**Minor Child,**

**W.S., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

Judge.


        A father appeals the termination of his parental rights.  **AFFIRMED.**


        Bryan Webber of Carr Law Firm, P.L.C., Des Moines, for appellant father.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

        Jami J. Hagemeier of Youth Law Center, Des Moines, attorney and

guardian ad litem for minor child.


        Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**BULLER, Judge.**

The father appeals termination of his parental rights to a child born in 2023. We reject his challenges to the statutory elements and his requests for a guardianship or additional time, and we affirm.

**Background Facts and Proceedings.**[1]  The Iowa Department of Health and Human Services (HHS) first became involved with this family in May 2024 due to the mother "displaying concerning behaviors" stemming from a mental health concern.  The child was placed in foster care because the mother was unsafe and the father's identity was initially not known.  The father was living in Florida; the mother had moved to Iowa in March 2024.

The child was adjudicated to be in need of assistance in October.  At that time, the juvenile court noted the father's intention to move to Tennessee, and that he admitted he could not assume custody at that time.[2]  The court ordered the father be provided contact with the child, and that he participate in anti-domestic-violence programming.

After the adjudication order, the father began participating in virtual visits with the child.  According to the social worker, the father was "very interactive" with and read to the child on their calls.  The father did not visit the child in person after the removal.    HHS recommended substance-abuse and mental-health

---

[1] Because the mother does not appeal, we focus almost entirely on facts relating to the father and the child.

[2] The juvenile court considered transferring jurisdiction to Florida, as the father had been living there and the mother moved back to Florida in August, but Florida declined jurisdiction.  Both parents moved shortly thereafter—the father to Tennessee, and the mother to Minnesota.

evaluations, as well as following all recommendations from those providers, and requested the father go through the interstate custody evaluation process.

The father had been diagnosed with depression and anxiety years before, but he was not on medication or in therapy for either. He testified, "since I've given my life to the Lord, . . . I don't have any of those feelings anymore. I don't get depressed. I don't have anxiety." Each parent reported domestic violence perpetrated by the other to HHS; neither reported the times they were the perpetrator. But at the termination trial, both parents acknowledged they were the aggressor at times. The father did not participate in any services addressing domestic violence. He reported marijuana use, but he never provided information from an evaluation or treatment.

The father declined the interstate custody evaluation and reported he was joining the military. He suggested he could take placement of the child after he completed basic and specialized training—in approximately twenty-three weeks. He requested in the alternative for the child to be placed with the maternal grandmother in a guardianship.

The county attorney, HHS, and the child's guardian ad litem all recommended termination of both parents' rights. The juvenile court found the father's decisions "made it impossible for [him] to assume care of the child" as of trial and terminated the father's rights under Iowa Code section 232.116(1)(e) and (h) (2025).

The father appeals termination of his parental rights, but the mother does not. We review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**Statutory Elements.** Although the father challenges the statutory elements under both section 232.116(1)(e) and (h), we need only find one ground for termination supported by the record to affirm. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We address paragraph (h).

The father does not challenge the age, adjudication, and removal-duration elements of this ground for termination. *See* Iowa Code § 232.116(1)(h)(1)–(3). He only argues the State did not prove the child could not be returned to the parents' custody as of trial. But the father's argument is framed in terms of a six-month extension or a guardianship with the maternal grandmother or paternal grandfather. And the fourth element requires the State to prove the child cannot be returned to their custody "at the present time"—meaning as of the termination trial. *Id.* § 232.116(1)(h)(4); *see In re L.A.*, 20 N.W.3d 529, 532–33 (Iowa Ct. App. 2025). Based on the father's admission at trial that he was not able to care for the child that day, the State proved the ground for termination. To the extent the father's petition adequately briefs the issue, we affirm the statutory elements on the merits.

**Guardianship.** As an alternative to immediate custody of the child, the father requested the child be placed in a guardianship until he was ready to assume custody of the child. At trial, he suggested the maternal grandmother and his father as options to serve as guardian. HHS argued a guardianship was not the best option based on the child's young age and need for a permanent home to grow up in.

Our courts have often said "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (citation

omitted). We consider all the surrounding circumstances, including the age of the child, the length of removal, the relationship between the parent and the potential guardian, and "the availability of other viable permanency options." *See id.* at 478. Here, the child is very young, has been removed and in foster care for more than a year, and has never met either suggested guardian; also, neither potential guardian let the court know of any agreement to a guardianship, and the child has potential adoptive placements. Without a viable guardianship ready to implement, we cannot find a guardianship is the best option here, and we affirm the juvenile court.

**Six-Month Extension.** The father also requested a six-month extension at both the permanency hearing and later at the termination hearing. He explained the time was for him to finish his basic and specialized training, which would end twenty-three weeks after the termination trial. He testified he would be stationed in Virginia after he was done. HHS expressed concern that the father would only have "around two weeks of wiggle room if a six-month extension was given." HHS also was worried because the father had not addressed the concerns about substance abuse or domestic violence.

The father's petition on appeal implies that the father's military training is the biggest barrier to his reunification with the child in the next six months. And if that were the only barrier, the juvenile court likely would have granted the extension. But from the start of the case, the father had mental-health, substance-abuse, and domestic-violence problems. And he chose to address none of them—moving away from the mental-health providers he had in Florida, not seeking any treatment for substance-abuse, and not dealing with his actions as both perpetrator

and victim of domestic violence. Also, the father has at times chosen to decline care of the child and did not visit the child in-person despite a stable placement for more than a year. On these facts, we see no basis on which the court could have found the need for removal would no longer exist after six months to justify an extension. *See* Iowa Code § 232.104(2)(b).

We affirm the termination of the father's parental rights.

**AFFIRMED.**